UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CODY CHRISTOPHER HANER,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.

_____/

Case No. 1:23-cv-1001

Honorable Sally J. Berens

**OPINION**

     This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.12.)

     This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

     Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MDOC, Washington, Bush, Dodds-Dugan, Rewerts, and Artis. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Copeland, Blair, and Stott: (i) official capacity claims, (ii) Fourth Amendment claims, (iii) all Eighth Amendment claims *except* for Plaintiff's conditions of confinement claims, and (iv) Fourteenth Amendment due process and equal protection claims. Plaintiff's Eighth Amendment conditions of confinement claims and state law claims against Defendants Copeland, Blair, and Stott in their individual capacities will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the MDOC, MDOC Director Heidi Washington, MDOC Correctional Facilities Administration Director Jeremy Bush, MDOC Deputy Director Cindy Dodds-Dugan, and the following DRF officials: Warden Randee Rewerts, Deputy Warden Fredeane Artis, Corrections Officer Unknown Copeland, Residential Unit Manager Unknown Blair, and Corrections Officer Unknown Stott.[2] (Compl., ECF No. 1, PageID.1–3.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2–3.)

In Plaintiff's complaint, he alleges that on January 2, 2023, he told "MDOC staff that [he] could not 'lock down', and that [he] needed to be placed into protective custody because [he] was in fear for [his] life."[3] (*Id.*, PageID.6.) When Plaintiff "made this complaint, the unit officer, per policy and/or procedure(s), contacted the yard officers and had [Plaintiff] moved to segregation (lockdown), where [Plaintiff] was supposed to be placed into a protective custody cell . . . or

---

[2] In the case caption of the complaint, Plaintiff lists "DRF Correctional Facility." (Compl., ECF No. 1, PageID.1.) However, Plaintiff did not list "DRF Correctional Facility" in his list of named Defendants. (*Id.*, PageID.2–3.) To the extent that Plaintiff intended to name DRF as a Defendant, DRF is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id*. at *7. Accordingly, to the extent that Plaintiff intended to name DRF as a Defendant, DRF is subject to dismissal.

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

transfer[red]." (*Id.*) Instead, Plaintiff contends that Defendant Copeland placed Plaintiff "in the cages where unmanageable prisoners are pl[a]ced until further disciplinary action(s) can be taken." (*Id.*) Plaintiff states that the cage was approximately 3 feet by 7 feet[4] and had no running water. (*Id.*, PageID.6, 9.) Further, Plaintiff claims that when he was placed in the cage, Defendant Copeland required Plaintiff to strip to Plaintiff's shorts and a t-shirt, and Plaintiff had to "lay on [the] bare floor." (*Id.*, PageID.6.) Plaintiff also claims that the cage in which he was placed "was covered with a chemical irritant," apparently from a prior occupant. (*Id.*, PageID.9.) Plaintiff states that he was not allowed to shower "to wash off the chemical irritant," but "other prisoners that were brought into the cages were allowed to take a shower." (*Id.*) Plaintiff contends that the chemical irritant caused him to have difficulty breathing and "a painful, burning sensation" in areas where he touched the chemical irritant. (*Id.*)

Defendant Copeland ordered Plaintiff to provide a "urine drop." (*Id.*, PageID.6.) Plaintiff claims that there was "no justification for such clearly abusive conduct," and that he "was not there for any circumstances that involved any controlled substance, and all [his] previous drugs tests have proven [to be] 'negative.'" (*Id.*) When Plaintiff informed Defendant Copeland that he "was unable to use the restroom, Copeland got close to [Plaintiff's] face and forcibly instructed [Plaintiff] to provide a urine sample." (*Id.*) Plaintiff alleges that he "was compelled to drink 9 cups of water despite stomach pains from drinking so much water." (*Id.*, PageID.6–7.) Plaintiff contends that he was only permitted to use the bathroom twice during a 17-hour period, which "forced [him] to urinate inside the cage[] on the floor[] where [he] had to lay down for the night." (*Id.*, PageID.9.)

---

[4] In his complaint, Plaintiff uses the notation for inches, rather than feet; however, that appears to be a typographical error.

Further, Plaintiff alleges that he requested "proper bedding" from Defendant Copeland when Plaintiff realized he would be "in the cage for an indefinite length of time." (*Id.*, PageID.7.) Plaintiff states that he has "well-documented back injuries and was afraid of irritating an existing injury." (*Id.*) Defendant Copeland provided Plaintiff with a blanket, which Plaintiff claims "is below the acceptable standards of MDOC policy for proper bedding." (*Id.*) Plaintiff states that despite his "objections and concerns," he was not provided with additional bedding and was "forced to sleep on the hard floor and remain in the cage for 17 hours." (*Id.*)

At an unspecified time, Defendant Blair "came to see [Plaintiff]" while he was in the cage, and Plaintiff explained that he needed to be placed in protective custody because he "was in fear for [his] life." (*Id.*) Plaintiff alleges that in response, Defendant Blair stated: "I will spray your bitch ass out of there," and "I have no sympathy for drug dealers." (*Id.*, PageID.8.) Plaintiff also alleges that he explained that he needed "proper bedding" and that he "could not remain on the hard floor for any length of time without causing more pain[] or risking further injury." (*Id.*) Plaintiff claims that Defendant Blair was "indifferent to [his] pleas." (*Id.*) At approximately 6:00 a.m., Defendant Stott was conducting rounds, and Stott approached Plaintiff and stated, "There's the little bitch Haner on the floor." (*Id.*)

When Plaintiff was removed from the cage, he was moved to the "next-door" level IV facility, even though he was at level II custody status. (*Id.*, PageID.9.) Plaintiff claims that he "informed staff that [he] could not be placed in the level-4 [facility] next door due to the communication between prisons." (*Id.*, PageID.10.) "As soon as [Plaintiff] began the grievance process, [he] was immediately transferred out of that location to the Muskegon Correction[al] Facility . . . , which is a custody-appropriate Level-2 facility." (*Id.*)

Plaintiff claims that "[b]eing 'forced' to sleep on the hard floor . . . caused severe pain that [he] did not experience beforehand, and [he has] constantly tried to seek relief from the prison medical department, without any success." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims under the Fourth Amendment, the Eighth Amendment, and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, as well as under state law.[5] As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.12.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."

---

[5] When listing the alleged failures of the MDOC "directors," DRF Warden Rewerts, and "the Deputy Warden at DRF," Plaintiff claims that these Defendants failed to establish or enforce policies about, among other things, "retaliation." (*See, e.g.*, Compl., ECF No. 1, PageID.5.) Additionally, Plaintiff vaguely uses the word "retaliatory" when describing the conditions of his confinement in the cage where he was placed. (*See, e.g.*, *id.*, PageID.8.) As discussed herein, all of Plaintiff's claims against the supervisory Defendants will be dismissed for failure to state a claim because Plaintiff seeks to hold these Defendants liable solely due to their supervisory positions. Furthermore, as to the non-supervisory Defendants, Plaintiff's vague reference to "retaliatory" conditions of confinement, without supporting facts and explanation about why they were "retaliatory," is insufficient to state a First Amendment retaliation claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Therefore, for these reasons, any intended First Amendment retaliation claims are subject to dismissal for failure to state a claim.

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.       Defendant MDOC and Official Capacity Claims

Plaintiff sues the MDOC, and he sues Defendants Washington, Bush, Dodds-Dugan, Rewerts, Artis, Copeland, Blair, and Stott in their official and individual capacities. (Compl., ECF No. 1, PageID.2–3.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Accordingly, Plaintiff's claims against the MDOC will be dismissed.

As to Plaintiff's claims against Defendants Washington, Bush, Dodds-Dugan, Rewerts, Artis, Copeland, Blair, and Stott in their official capacities, Plaintiff seeks only monetary damages. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims against Defendants in their official capacities.

Moreover, even if Plaintiff had sought declaratory or injunctive relief, as explained below, his official capacity claims would still be dismissed. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or

declaratory relief may constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive or declaratory relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). In the present action, Plaintiff's allegations against Defendants relate to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff's claims against the MDOC and Plaintiff's official capacity claims against Defendants Washington, Bush, Dodds-Dugan, Rewerts, Artis, Copeland, Blair, and Stott will be dismissed.

**B.      Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis**

Plaintiff claims in a conclusory manner that Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis have failed to "implement proper procedures" and have failed to "train and/or supervise, or continue to supervise staff . . . ." (*See, e.g.*, Compl., ECF No. 1, PageID.4–5.)

Although Plaintiff lists the procedures that he believes these Defendants should implement or follow, Plaintiff fails to allege any facts showing how these Defendants were personally involved in the alleged violations of his constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Instead, Plaintiff seeks to hold Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis liable due to their supervisory positions. However, government officials, such as Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff alleges in a conclusory manner that Defendants failed to train and supervise their subordinates adequately (*see, e.g.*, Compl., ECF No. 1, PageID.5); however, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. Therefore, for the reasons set forth above, Plaintiff's claims against Defendants Washington, Bush, Dodds-Dugan, Rewerts, and Artis will be dismissed.

## C.     Defendants Copeland, Blair, and Stott

### 1.     Fourth Amendment Claims

Plaintiff claims that Defendant Copeland ordered Plaintiff to provide a "urine drop," and that there was "no justification for such clearly abusive conduct" because Plaintiff "was not there for any circumstances that involved any controlled substance, and all [his] previous drugs tests

have proven [to be] 'negative.'" (Compl., ECF No. 1, PageID.6.) The Court construes this allegation to raise a Fourth Amendment claim.

The Fourth Amendment protects against unreasonable searches and seizures of one's person. U.S. Const. amend. IV. Courts recognize that inmates retain a limited expectation of bodily privacy under the Fourth Amendment. *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 n.2 (6th Cir. 2013). As relevant to Plaintiff's claim regarding the "urine drop," courts, including the Sixth Circuit, have held that "random drug testing of prisoners is a reasonable means of combating the unauthorized use of narcotics and does not violate the Fourth Amendment." *Froman v. Sparkman*, No. 97-5449, 1998 WL 57344, at *1 (6th Cir. Feb. 2, 1998) (citing *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994); *Forbes v. Trigg*, 976 F.2d 308, 313 (7th Cir. 1992), *cert. denied*, 507 U.S. 950 (1993); *Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986)); *see also Thompson v. Souza*, 111 F.3d 694, 701–02 (9th Cir. 1997). Although it is clear that Plaintiff believes that Defendant Copeland should not have requested the "urine drop," Plaintiff alleges no *facts* about the circumstances leading up to the request. Without such facts, Plaintiff fails to show that the request for the "urine drop" was improper. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. Accordingly, any intended Fourth Amendment claim regarding the request for the "urine drop" will be dismissed.[6]

## 2.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual

---

[6] The Court notes that it considers the allegations regarding Plaintiff being "compelled to drink 9 cups of water" to complete the "urine drop" as part of Plaintiff's conditions of confinement claims, not Plaintiff's Fourth Amendment claim. (Compl., ECF No. 1, PageID.6.)

punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

The Court construes Plaintiff's complaint to raise claims under the Eighth Amendment premised on (i) the conditions of his confinement in the cage "where unmanageable prisoners are pl[a]ced"; (ii) verbal harassment; and (iii) a lack of medical care. (Compl., ECF No. 1, PageID.6–11.) The Court addresses each Eighth Amendment claim in turn.

### a. Conditions of Confinement

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Here, Plaintiff claims that Defendant Copeland placed Plaintiff in a cage that was approximately 3 feet by 7 feet and that had no running water. (Compl., ECF No. 1, PageID.6, 9.) Plaintiff states that he remained in the cage for an approximately 17-hour period. (*Id.*, PageID.9.) Plaintiff also alleges, among other things, that Defendant Copeland required Plaintiff to strip to Plaintiff's shorts and a t-shirt, and Plaintiff had to "lay on [the] bare floor," (*id.*, PageID.6), and that the cage "was covered with a chemical irritant," apparently from a prior occupant. (*Id.*, PageID.9.) Further, Plaintiff alleges that he was not allowed to shower "to wash off the chemical irritant," and that he was "forced to urinate inside the cage[] on the floor[] where [he] had to lay down for the night." (*Id.*) Plaintiff claims that Defendants Blair and Stott "came to see [Plaintiff]" while he was in the cage, and that they were aware of the conditions of his confinement in the cage. (*See id.*, PageID.7–8.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to Plaintiff. Accordingly, the Court will not dismiss Plaintiff's

Eighth Amendment conditions of confinement claims against Defendants Copeland, Blair, and Stott on initial review.[7]

### b.      Verbal Harassment

Plaintiff alleges that Defendants Blair and Stott used profanity when talking with Plaintiff. (*See* Compl., ECF No. 1, PageID.8 (alleging that Defendant Blair stated, "I will spray your bitch ass out of there," and "I have no sympathy for drug dealers," and that Defendant Stott stated, "There's the little bitch Haner on the floor").)

While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

### c.      Medical Care

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock*

---

[7] In describing the conditions of his confinement, Plaintiff claims, among other things, that Defendants Copeland, Blair, and Stott failed to protect him from the alleged unconstitutional conditions of his confinement. (*See, e.g.*, Compl., ECF No. 1, PageID.7.) Plaintiff's claims regarding the conditions in the cage are properly brought as conditions of confinement claims under the Eighth Amendment. Plaintiff's use of the phrase "failure to protect" does not create a separate failure-to-protect claim. Therefore, to the extent that Plaintiff intended to raise separate failure-to-protect claims regarding the conditions of the cage, the failure-to-protect claims would be subject to dismissal.

*v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, Plaintiff claims in a conclusory manner that the conditions of his confinement while held in the cage resulted in Defendants Copeland, Blair, and Stott being "deliberately indifferent to [his] serious medical needs" because he was not provided with "proper bedding" and has "well-documented back injuries and was afraid of irritating an existing injury," and he was forced to drink nine cups of water, so that a urine sample could be taken. (*See* Compl., ECF No. 1, PageID.6–8.)

As discussed above, the Court will not dismiss Plaintiff's conditions of confinement claims against Defendants Copeland, Blair, and Stott at this stage of the proceedings. However, Plaintiff fails to allege sufficient facts to show that the alleged unconstitutional conditions of his confinement also constituted deliberate indifference to his serious medical needs. For example, Plaintiff does not allege that he asked Defendants Copeland, Blair, and Stott for medical care, and they refused to facilitate his receipt of medical care. Indeed, besides alleging in a conclusory and vague manner that Defendants Copeland, Blair, and Stott were "deliberately indifferent to [Plaintiff's] medical needs," Plaintiff fails to allege any *facts* to show how these Defendants' actions interfered with Plaintiff's receipt of medical care. The specific conditions of Plaintiff's confinement are appropriately brought as conditions of confinement claims under the Eighth Amendment, and not as Eighth Amendment medical care claims.

Plaintiff also claims that after sleeping on the floor in the cage, he had "severe pain," and "the medical dep[artment] does not take [his] complaints serious enough to provide the basic standard of medical treatment." (*Id.*, PageID.10.) The Court assumes, without deciding, that Plaintiff's health care needs are sufficiently serious to satisfy the objective component of the relevant two-prong test. However, as to the subjective component, Plaintiff does not allege that any of the named Defendants were involved in Plaintiff's receipt, or lack thereof, of medical care. Where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, besides Plaintiff's conclusory assertion that "the medical dep[artment] does not take [his] complaints serious enough to provide the basic standard of medical treatment," Plaintiff alleges no further facts explaining what treatment he is, or is not, receiving, and how the treatment he is receiving does not meet "the basic standard of medical treatment." (Compl., ECF No. 1, PageID.10.) Plaintiff's conclusory assertions unsupported by any facts are insufficient to state a claim upon which relief may be granted. *See Twombly*, 550 U.S. at 555–61; *Iqbal*, 556 U.S. at 676.

Accordingly, because Plaintiff fails to allege that any of the named Defendants were involved in his receipt of medical care, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding Plaintiff's allegedly inadequate medical care.

### 3.      Fourteenth Amendment Claims

The Court construes Plaintiff's complaint to raise claims under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

### a.      Due Process Clause

Plaintiff alleges that after he "was removed from the cage, he was moved to the "next-door" level IV facility, even though he was at level II custody status. (Compl., ECF No. 1, PageID.9.) Plaintiff claims that this violated his due process rights. (*Id.*)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones*

19

*v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As relevant to Plaintiff's claim, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Moreover, although it is clear that Plaintiff did not want to be placed in the facility next door, claiming that "[he] could not be placed in the level-4 [facility] next door due to the communication between prisons," Plaintiff alleges insufficient facts to suggest that his placement at the level IV facility was an atypical and significant deprivation. Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants regarding his placement in the level IV facility.

Furthermore, to the extent that Plaintiff intended to raise a substantive due process claim regarding his placement in the level IV facility, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### b.      Equal Protection Clause

Plaintiff alleges that the cage in which he was placed "was covered with a chemical irritant," apparently from a prior occupant, and that he was not allowed to shower "to wash off the chemical irritant." (Compl., ECF No. 1, PageID.9.) Plaintiff claims that "other prisoners that were brought into the cages were allowed to take a shower." (*Id.*) The Court construes this allegation to raise an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

21

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff alleges that he was treated differently than others, he fails to allege that the other prisoners were similarly situated in all relevant respects. Simply because other inmates were also placed in the same cages does not make these inmates appropriate comparators. For example, Plaintiff alleges no facts about what led to these inmates being placed in the cages. Instead, his allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### D.    State Law Claims

Plaintiff alleges that Defendants violated the MDOC's policies and state law. (*See, e.g.*, Compl., ECF No. 1, PageID.6–9, 11 (stating that Defendants violated the MDOC's policies and were negligent).)

Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under Section 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants MDOC, Washington, Bush, Dodds-Dugan, Rewerts, and Artis, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. As to Defendants Copeland, Blair, and Artis, because Plaintiff continues to have pending federal claims against these Defendants, the Court will exercise supplemental jurisdiction over his state law claims against them.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants MDOC, Washington, Bush, Dodds-Dugan, Rewerts, and Artis will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants MDOC, Washington, Bush, Dodds-Dugan, Rewerts, and Artis will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Copeland, Blair, and Stott: (i) official capacity claims, (ii) Fourth Amendment claims, (iii) all Eighth Amendment claims

*except* for Plaintiff's conditions of confinement claims, and (iv) Fourteenth Amendment due process and equal protection claims. Plaintiff's Eighth Amendment conditions of confinement claims and state law claims against Defendants Copeland, Blair, and Stott in their individual capacities remain in the case.

An order consistent with this opinion will be entered.


Dated:   April 10, 2024                                  /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         United States Magistrate Judge